J-S35001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.N.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 739 EDA 2020 |

Appeal from the Decree Entered January 31, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000517-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: H.N.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 740 EDA 2020 |

Appeal from the Order Entered January 31, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0002909-2015

BEFORE:   BOWES, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                    Filed: September 10, 2020

A.S. ("Father"), files these consolidated appeals from the decree entered

on January 31, 2020, in the Philadelphia County Court of Common Pleas,

granting the petition of the Philadelphia Department of Human Services

_____

[*] Retired Senior Judge assigned to the Superior Court.

("DHS") to involuntarily terminate his parental rights to his minor daughter, H.N.S., born in October 2011, pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), and (b).[1] Father further appeals from the order dated and entered on January 31, 2020 changing H.N.S.'s permanent placement goal to adoption pursuant to the Juvenile Act, 42 Pa.C.S. § 6351.[2] After review, we affirm.

The trial court summarized the procedural and factual history as follows:

[H.N.S.] has been in care continuously for approximately four years. DHS initially became involved with this family after two CPS [("Child Protective Services")] reports were received alleging [H.N.S.] was the victim of sexual and emotional abuse, medical abuse, neglect and had both an infected dog bite and scabies.[3] The reports were determined to be valid. On December 10, 2015, [H.N.S.] was adjudicated dependent and committed to DHS because [H.N.S.] was "without proper care or control, subsistence, [or] education as required by law or other care or control necessary for his physical, mental, or emotional health, or

---

[1] By separate decree entered September 9, 2019, the trial court voluntarily terminated the parental rights of C.H., Mother ("Mother"), and terminated the parental rights of any unknown father. Neither Mother nor any unknown father filed a separate appeal or participated in the instant appeals.

[2] Father waived his challenge to the goal change for failure to raise the issue in the statement of questions involved section of his brief or address the issue in the argument section of his brief. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa.Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."). Nevertheless, even if Father had properly preserved this issue for review we would find that it lacked merit for the reasons discussed with respect to termination of parental rights.

[3] H.N.S. was in the care of her maternal grandparents at the time. N.T., 1/31/20, at 10.

morals."  Based on those concerns, Beverly Leff, the Community Umbrella Agency ("CUA") case manager, testified that her agency established single case plan objectives for Father.

Trial Court Opinion, 4/24/20, at 1-2 (citations to record omitted).

Throughout the next two years, the trial court conducted regular permanency review hearings, maintaining H.N.S.'s placement and permanent placement goal.  On June 21, 2018, DHS filed petitions to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b), and to change the permanency goal to adoption.  After several continuances, the trial court held a combined termination and goal change hearing on January 31, 2020.  Father was present and represented by counsel. H.N.S. was represented by a guardian *ad litem* as well as counsel, referred to on the record as a child advocate.[4]  DHS presented the testimony of Beverly Leff, CUA case manager, Catholic Community Services.  Child Advocate presented the expert testimony of Roya Paller, the forensic social worker, who assessed H.N.S.'s understanding of and wishes regarding adoption, attachment to her foster parent, and the impact of the termination of parental rights.  Father testified on his own behalf.

By decree dated and entered January 31, 2020, the trial court involuntarily terminated the parental rights of Father pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b).  Thereafter, on February 28, 2020, Father, through

---

[4]  The guardian *ad litem* and the child advocate voiced their support for the termination of Father's parental rights as promoting the best interests and legal interest of H.N.S., respectively.  N.T., 1/31/20, at 83-87.  Both filed briefs in this Court reiterating their support.

appointed counsel, filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On April 2, 2020, this Court, *sua sponte,* consolidated Father's appeals.

On appeal, Father raises the following issues for our review:

1. Whether the [t]rial [c]ourt erred by terminating the parental rights of . . . Father, under 23 Pa.C.S.A. § 2511 subsections (a)(1) and (a)(2)?

2. Whether the [t]rial [c]ourt erred by finding, under 23 Pa.C.S.A. § 2511(b), that termination of [Father's] parental rights best serves [H.N.S.'s] developmental, physical and emotional needs and welfare?

Father's brief at 4 (suggested answers omitted).

In matters involving involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all

- 4 -

credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under [§] 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

In the case *sub judice*, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b). As we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b), we analyze the court's termination decree pursuant to § 2511(a)(2) and (b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

The pertinent provisions which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(a)(2), and (b).

With regard to termination of parental rights pursuant to § 2511(a)(2), we have indicated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2)

such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, 797 A.2d at 340 (internal quotation marks and citations omitted).

In the case at bar, at the conclusion of the relevant hearing, in terminating Father's parental rights, the trial court stated, in part:

> . . . I gave you two visits a week. You've seen her a total of five times. We gave you a list of things to do. And it wasn't hard. You know, I started looking at -- going back in my notes. And the truth is, is that we were happy you were around when this case came in.
>
> The issue was, you hadn't been in her life, and you had to make up for that. And you had to do that then. But you did nothing. You did nothing. Haven't completed parenting. Don't have housing. Didn't give -- engage in drug and alcohol or mental health. Didn't visit, which is probably the biggest thing.

N.T., 1/31/20, at 90.

Further, in finding grounds for termination of Father's parental rights pursuant to § 2511(a)(2), the court reasoned:

> Applying [**M.E.P.**] and the elements set forth under 2511(a)(2) to the instant case, DHS met its burden of demonstrating that termination was proper. The evidence established that "incapacity" and "refusal" under 2511(a)(2) existed given that Father failed to demonstrate a concrete desire or ability to care for [H.N.S.]. Father failed to cooperate with the services provided by CUA, including drug and alcohol treatment, mental health treatment, parenting classes, and visitation. Father also failed to obtain stable housing throughout this case and did not have housing at the TPR [("termination of parental rights")] hearing. The testimony demonstrated that, because of Father's lack of presence in [H.N.S.'s] life and [H.N.S.'s] significant emotional and behavioral needs, parenting classes and visitation were essential to reunification. However, Father failed to re-engage in parenting classes or complete a PCE [("parenting capacity evaluation")] despite Ms. Leff's testimony that she referred him to classes in Pittsburgh. Additionally, Father failed to maintain contact with [H.N.S.] or visit her for more than five hours total over approximately three years. This [c]ourt found that Father's failure to comply with CUA and consistently visit [H.N.S.] has left [H.N.S.] without essential parental care, and the cause of such neglect, refusal, and continued incapacity will not be remedied by Father. Based on the foregoing, this [c]ourt found that competent evidence existed to justify the termination of Father's parental rights pursuant to [§] 2511(a)(2).

Trial Court Opinion, 4/24/20, at 9 (citations to record omitted).

Father argues that he does not have "an incapacity that would prevent him from parenting his [c]hild." Father's brief at 13. While admitting to a lack of appropriate housing, Father asserts that he completed a mental health evaluation, as well as drug screenings and drug treatment. **Id**. He further completed anger management and financial planning classes. **Id**. He indicates that he is employed, and, although he completed "most" of a

parenting course, he was unable to finish the course "due to obstacles beyond his control," maintaining that "his employer would not give him time off to complete his single case plan objectives." *Id*. Finally, Father argues that he has attended visitation "regularly" since transportation has been provided by CUA. *Id*.

The certified record supports the trial court's finding of grounds for termination under § 2511(a)(2) and reveals that Father failed to complete his single case plan objectives aimed at reunification with H.N.S. CUA case manager, Barbara Leff, recounted that Father's single case plan objectives included: a Behavioral Health Services ("BHS") evaluation and parenting classes, mental health treatment, drug and alcohol treatment, anger management programs, visitation, and housing. N.T., 1/31/20, at 12-13. Ms. Leff testified that Father was aware of these objectives and the fact that they needed to be completed in order to achieve reunification with H.N.S. *Id*. at 11. Father's compliance with these objectives was described as "no compliance" at the most recent permanency review hearing on September 9, 2019. Permanency Review Order, 9/9/19. While acknowledging Father's completion of anger management and financial counseling courses, Ms. Leff stated that Father admitted to continuing financial difficulties and failed to complete his other objectives. N.T., 1/31/20, at 23-24, 45, 47-48.

Significantly, from 2017 to 2020, Father attended only five supervised visitations with H.N.S. for a total of approximately four to five hours.[5] *Id*. at 12-15, 73-74. Further, despite referrals, Father never obtained appropriate housing. *Id*. at 24-25, 40-42, 60. Ms. Leff stated, "As of yesterday, he told me that he doesn't have a place to live right now." *Id*. at 24. When questioned, Father admitted that he lacked appropriate housing. *Id*. at 60. Moreover, acknowledging financial difficulties, Father conceded that, while in Pittsburgh, he did not contact the CUA for any assistance with the housing component. *Id*. at 62-63.

Likewise, Father failed to complete and/or offer proof of completion of mental health and drug and alcohol treatment; failed to provide verification of completion of parenting classes;[6] and failed to complete a healthy relationships program. *Id*. at 19, 20-23, 43-47. Notably, as to mental health treatment, Ms. Leff stated that Father had not engaged in such treatment, despite recommendation by BHS, nor had he provided verification that he did not require such treatment. *Id*. at 20-21. Rather, she explained, "He has

---

[5] As reported by Ms. Leff, aside from the lack of visitation, Father likewise did not maintain contact with H.N.S. during this time. *Id*. at 16. In addition, Father did not have contact with H.N.S. between her birth and the adjudication in 2015. *Id*. at 11.

[6] Father testified that he was enrolled in parenting classes at the ARC, but was unable to complete the program due to his employment. *Id*. at 69-72. Ms. Leff stated that in 2019 she referred Father for additional parenting classes in Pittsburgh, which were not completed. *Id*. at 19, 22-23, 46-47.

stated to me that he doesn't have any mental health issues." *Id*. at 20. Ms. Leff further indicated that Father declined drug and alcohol treatment through the ARC.[7] *Id*. at 22. She also testified that Father did not complete a parenting capacity evaluation ("PCE").[8] *Id*. at 18, 20, 44-45.

Father conceded that he was aware of these objectives and failed to complete them. *Id*. at 74.

> **MR. MARTIN:** Okay. So, you have a list of objectives. And you're actually acknowledging on the record that you knew that you had these objectives all the way back to 2016. Is that right?
>
> **THE FATHER:** Yes.
>
> **MR. MARTIN:** And you're admitting to the [c]ourt that you haven't completed them. Is that right?
>
> **THE FATHER:** Yes.

*Id*.

As a result, Ms. Leff opined that Father was not ready to be reunified with H.N.S. and was not any closer to reunification than when H.N.S. was

---

[7] Father, however, noted that he went for drug and alcohol treatment through the ARC, but did not remember the name of the company he treated with, the name of his therapist, or the number of sessions attended, and did not receive a certificate of completion. *Id*. at 67-68.

[8] We observe that, despite testimony as to the lack of completion of a PCE, there is the suggestion at the beginning of the proceeding that a PCE was recently completed. *Id*. at 5-6. ("Okay. At the last court date, a -- Father was ordered for a PCE. We have the results of that PCE. Despite the fact that we have the results -- well, I'm passing out a copy of that evaluation. . . . " *Id*.). It is unclear if this was instead a mental health evaluation. A copy of any such evaluation was not admitted as evidence and is not included as part of the certified record. Accordingly, we do not consider it as evidence in favor of termination.

adjudicated dependent. *Id*. at 18, 33-34. Given Father's lack of visitation and contact, Ms. Leff did not even support unsupervised contact. *Id*. at 18. Critically, she indicated that Father was unable to meet H.N.S.'s daily needs[9] and lacked the parental capacity to appropriately care for H.N.S. *Id*. at 17-20. Ms. Leff testified:

> **MR. JOYCE:** Ms. Leff, do you have concerns based on your interaction with Father about his capacity to parent [H.N.S.]?
>
> **MS LEFF:** Yes, I do.
>
> **MR. JOYCE:** What are those concerns?
>
> **MS LEFF:** He cannot -- he doesn't know how to relate to his child. He has admitted to me he has financial problems. He has admitted to me that he has -- does not have suitable housing. I've asked him to provide pay stubs. He provided from July of 2019 to September. I asked -- of 2019. And I asked him for more. He did not reply. I've asked him to complete parenting classes again and also sent him where he could go in Pittsburgh since that's where he lives. And he never did it.
>
> . . . .
>
> **MR. JOYCE:** Do you think Father's capable of taking care of himself?
>
> **MS LEFF:** No.
>
> **MR. JOYCE:** Do you -- does that give rise to any concerns about his ability to care for a special needs child, like [H.N.S.]?
>
> **MS LEFF:** Yes.

*Id*. at 19-20.

---

[9] Ms. Leff indicated that H.N.S. has emotional, behavioral, and educational needs. *Id*. at 17.

Hence, the record substantiates the conclusion that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused H.N.S. to be without essential parental control or subsistence necessary for her physical and mental well-being. *See In re Adoption of M.E.P.*, *supra* at 1272. Moreover, Father cannot or will not remedy this situation. Therefore, we do not disturb the trial court's findings.

Next, we address whether termination was proper under § 2511(b). As to § 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, *supra* at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as

- 13 -

well. Additionally, § 2511(b) does not require a formal bonding evaluation."

*In re Z.P.*, *supra* at 1121 (internal citations omitted).

Moreover,

While a parent's emotional bond with his or her child is a major aspect of the [§] 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, *supra* at 1219 (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)) (quotation marks and citations omitted).

In finding that H.N.S.'s emotional needs and welfare favor termination pursuant to § 2511(b), the trial court reasoned as follows:

In the instant matter, this [c]ourt determined that [H.N.S.] would not suffer irreparable emotional harm if Father's parental rights were terminated. The testimony demonstrated that [H.N.S.'s] primary bond is with the foster parent and that the foster parents meet [H.N.S.'s] daily medical, general and therapeutic needs. Although [H.N.S.] expressed a willingness to speak with Father occasionally, she clearly expressed her desire to be adopted by her foster parents. Notably, there was credible testimony that [H.N.S.] was aware of Father's instability, especially with visitation, and wanted the stability of adoption. There was testimony that [H.N.S.] is very bonded with her foster mother, father and brother and enjoys her primary parent-child relationship with her foster mother. Most significantly, Father has had very little contact with [H.N.S.] throughout her entire life. Father acknowledges that he did not see [H.N.S.] between her birth and adjudication and then for only . . . approximately five hours between 2017-2020. Additionally, in determining that termination would best serve the needs and welfare of [H.N.S.],

- 14 -

this [c]ourt considered that Father had not been able to meet [H.N.S.'s] emotional, physical, and developmental needs for almost four years prior to the TPR hearings. Ms. Leff characterized the relationship between Father and [H.N.S.] as "childlike" and expressed her concerns that Father could adequately parent [H.N.S.] with her special needs. Additionally, Father's acknowledged financial issues and lack of housing remained barriers to reunification and prevented [H.N.S.'s] permanency. For the foregoing reasons, this [c]ourt properly granted DHS's petition to involuntarily terminate the parental rights of Father pursuant to [§] 2511(b).

Trial Court Opinion, 4/24/20, at 10-11 (citations to record omitted) (footnote omitted).

Father argues that he was not given the opportunity to establish a relationship with H.N.S. through appropriate visitation. Father's brief at 15. He points to the fact that he has attended visitation regularly since the court ordered CUA to provide transportation. *Id*. He further offers that evidence was presented that H.N.S. would like to continue to have contact with Father. *Id*. Father challenges that termination of parental rights would meet H.N.S.'s developmental, physical, and emotional needs and welfare and asserts that, if he had another chance, he could be "the [f]ather [H.N.S.] needs him to be." *Id*. at 15-16.

We disagree. Contrary to Father's protestations and empty promises, the certified record supports the trial court's finding that H.N.S.'s developmental, physical and emotional needs and welfare favor termination of Father's parental rights pursuant to § 2511(b). While Father professes to love H.N.S., a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, *supra* at 1121.

- 15 -

At the time of the hearing, H.N.S. had been in placement for approximately four years, and is entitled to permanency and stability. A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id*. at 1125.

Accordingly, for all of the foregoing reasons, we affirm the decree terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Decree and order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/10/20